Youngpoong Corporation v. Petalpoint Holdings, LLC, et al. Good morning, Mr. Adams. You have five minutes. You can begin whenever you're ready. Good morning, Your Honors. May it please the Court, William Adams for Petalpoint, Kevin Hom, and Janet Ha, the respondents in the underlying section 1782 proceeding. A State pending appeal is warranted here because the District Court applied the wrong legal standard to two of the four intel factors, and the balance of the equities also favor respondents. On the first intel factor, it considers whether the requested discovery is within the foreign court's jurisdictional reach. In such circumstances, section 1782 assistance isn't needed. The District Court, however, erroneously ruled that the first factor weighs against discovery only where the subpoena target is a participant in the foreign proceeding or is holding a participant's documents derivatively. But it doesn't matter why the subpoena target has the documents. If the requested discovery is available in the foreign jurisdiction, then section 1782 discovery is not necessary. The entire purpose of the first intel factor is to tease out whether the first statutory aim under 1782 is met. Is there an efficient – will discovery provide an efficient means of assistance to the foreign tribunal? By narrowly looking only at whether there was – the documents were held derivatively, the District Court did not engage in that analysis. Is it fair to say that that was the only thing the District Court focused on, whether it held derivatively? That was one thing that it mentioned. That was the only thing? That was the determinative consideration on intel factor one. That's on page eight of the District Court's decision. It also considered, of course, the other intel factors. We say there's two legal errors, one on intel factor one and also on intel factor three, and that this Court should ultimately, on the merits, should remand to the District Court to weigh the intel factors under the proper legal – under the proper legal standard. So, yes, Judge Bianco, we do think on factor one it was dispositive to the District Court that our – the subpoena target was only – was not holding the documents derivatively. There's nothing in this Court's precedents that have that limitation. Let me just ask you about the irreparable harm argument. Yes, Your Honor. I think a primary argument is that there's privileges that would – confidential information in connection with this discovery that you're concerned about. Is that fair? Absolutely, Your Honor. There are several privileges under Korean law, including similar privileges to attorney-client privilege in the U.S., to internal use privileges, documents that were created for internal purposes, and also trade secret-like privileges. Those are set forth in the expert report, paragraphs 87, 89, and 94. Why isn't it enough? The District Court did issue a protective order that commits all the parties to use their best effort to cooperate to ensure that the Korean tribunal adopts protective measures to ensure the confidentiality of the discovery material. Why isn't that sufficient? The privileges – Just one second. Sure, Your Honor. The privileges are actually privileges against production under Korean law, not just privileges from use. And so in the – if this discovery process were proceeding in Korea, and we think it should have because most of these documents that are being requested are actually available from participants in the forum proceeding, there would be a supervisory process by the Korean court as to whether these documents are actually producible or subject to production in the first instance, notwithstanding these privileges. We're also – I understand that, but obviously there's a difference between them being made public, right? Even if they're wrongfully produced or they didn't need to be produced, if they're protected from public disclosure, that substantially diminishes the harm, right? The protective order requires the other side to use their best efforts to protect against public disclosure. But if they join you in requesting that the Korean court protect these, your own expert in paragraph 13 said that under Korean law, you could seek precisely that type of protective order in Korea with respect to these documents. No doubt, Your Honor, that is a possible outcome in Korea. But as also in paragraph 13, our expert makes clear that third parties are able to seek inspection of the documents. There's a public right of access, and that we – The Korean court can limit that. No doubt it could, Your Honor, but we certainly don't know that it will do that. On the flip side, they're saying there's this hearing in January, and they're concerned the litigation could be over by mid this year possibly. So in balancing these things, why is that not a concern? I know, again, your expert said, well, that may not be the only hearing, but certainly that seems like there's a fate that's important coming up, right? I think, Your Honor, it's very clear reading all the expert declarations together that this is a rolling, iterative process. The January hearing is not the end-all, be-all. There is an opportunity to put in evidence throughout the course of the case. Only time that the Korean court would prohibit sort of what they would consider late introduction of evidence is if there was intentional withholding or gross negligence. That's at paragraph 8 of the reply declaration submitted on your docket at 25.2. And it's also clear, as our expert explains in that declaration, that shareholder derivative actions like that are at issue here are multiyear processes. It goes through and shows that over two to six years is the duration of comparable examples. It's not realistic to expect that the last time they can put in evidence is January or that the case is going to be over in middle of this year. Thank you, Mr. Adams. Thank you. All right. We'll hear from Mr. Hellman. Good morning, Your Honors, and may it please the Court. Matthew Hellman from Jenner and Block on behalf of the Apolli Yunpeng Corporation. I'd like to just address the points that my friend on the other side has made this morning. First, because none of those points show that the strong showing that's necessary to overturn Judge Vargas' decision here and provide a stay pending appeal. First, with respect to the first intel factor, it's correct. The Court did not limit itself to the derivative document inquiry. It expressly held that it looks to whether discovery against the real party whom from information is sought is involved in the foreign proceedings. That's on page 8 of the District Court's opinion. Now, to be clear, as a matter of law, under Judge Walker's decision in Mattel-Gesellschaft and other cases from this Court, there is no exhaustion requirement under Section 1782. This Court has said that many times. And as a factual matter, as a practical matter, these documents are not available from the Korean process anyway. Petal Point is not a party to that proceeding, nor does Korean law permit Yunpeng to obtain these documents without satisfying stringent standards that they've tried to satisfy in the accounting proceeding that is going on in Korea as well. But Korea Zinc has refused to produce those documents in connection with that. The District Court did not abuse its discretion in finding that these documents were not available in the foreign proceeding in the way that Factor I considers. I'd also point out that my friends on the other side, if you read their submission carefully, most of their argument on Factor I is not that the documents are available in Korea, but they're not relevant to the Korean proceeding. And, of course, relevance is not a Factor I inquiry, let alone or really any factor under the intel factors. There was no abuse of discretion with respect to Factor I. What about this issue of privilege? Sure. With respect to the irreparable harm question, let me say a few things. One, this is the classic kind of balancing of the equities that a district court gets deference on when it looks at the issues, and the deference here should be accorded because the discretion was properly exercised. With respect to the privilege issue and the disclosure more generally, one, this is old information. This transaction is several years old at this point. And, two, we are not a – Young Poon is not a competitor of Petal Point or of Korea Zinc. It is the primary shareholder of that company. In a shareholder derivative action, a protective order is more than capable of protecting the party's interest to external disclosure of these documents. Simply being able to use these documents in a Korean proceeding is not irreparable harm to the other side. They may not like what these documents say or show or what this deposition says or shows, but that does not make it irreparable harm. And, as I believe I heard the Court point out, it is possible, where appropriate, for my friends on the other side or Korea Zinc to ask for sealing with respect to anything in the documents in the Korean proceeding. They made this alternative proposal of attorney's eyes only. Can you just address why that wouldn't be sufficient at this juncture while the appeal was pending? Sure. So attorney's eyes only doesn't let us use the documents in the proceeding for which 1782 is made. Are you really going to be able to do that? I mean, the January hearing is pretty close. Are you really going to be able to use these? So the answer is yes, we certainly hope to. In the event that this Court grants us the relief that we're seeking or affirms, we plan to be in front of Judge Vargas with a schedule for producing the documents in time to allow us to use them for the January 29th proceeding. We may not be able to get the depots done, but we can get the documents. And as to whether or not the January 29th proceeding is important, it is. It is effectively the beginning of a bench trial on this shareholder derivative suit in front of the judge. If, for example, the document production turns out to show, for example, that Pedal Point, which purchased this company for hundreds of millions of dollars, did so without any economic analysis from the parent or any information that goes to the economics of the deal, that's something that we'd want to say right at the start of that proceeding. And it matters if we are delayed, contrary to Section 1782's aims, in being able to produce it. So January matters. January is a workable deadline, provided that we're able to get the documents in the near term. And then we'll take the depositions as quickly as is appropriate under the scheme. But again, that kind of – You won't get all of the discovery done based on these documents before January 29th, will you? Say it one more time, Your Honor. You won't get it before January 29th. I mean, it'll take longer. My understanding is, based on discussions between the parties, that we're going to be in a position to get at least important and perhaps a substantial amount of that discovery ahead of the 29th hearing in the event that we're able to move quickly, the stay is lifted. So, yes, we do think the 29th hearing matters. And it's – Judge Vargas heard all of this in the lower court and asked for some strong reason to think that she got it wrong. Her judgment ought to be affirmed with respect to this. All right. Thank you. Thank you both for a reserved decision. Have a good day. Thank you, Your Honor.